NOT FOR PUBLICATION (Doc. Nos. 37 & 38)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Jacqueline MARTELACK, : | |
| : | Civil No. 13–7098 (RBK/KMW) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| TOYS R US, : | |
| : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

Plaintiff Jacqueline Martelack brings claims against Defendant Toys 'R' Us, Inc. (improperly plead as "Toys R Us") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as New Jersey law. This action comes before the Court upon Defendant's motions for summary judgment and to strike Plaintiff's jury demand (Doc. No. 37) and upon Plaintiff's cross-motion for partial summary judgment (Doc. No. 38). Plaintiff moves for summary judgment on the first, second, third, and seventh counts of her Complaint. For the reasons explained below, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment, and the Court will deny Defendant's Motion to Strike Plaintiff's jury demand. The Court will dismiss without prejudice Plaintiff's Motion for Partial Summary Judgment.

**I.     BACKGROUND**[1]

On August 28, 2012, Plaintiff submitted an electronic application for employment with Defendant. Defendant's Statement of Material Facts ("DSOMF") ¶ 1. Plaintiff agreed to a Privacy Agreement that contained a jury waiver provision. *Id.* ¶ 2. Defendant hired Plaintiff as a part-time, hourly cashier in Defendant's Cherry Hill, New Jersey store in September 2012. *Id.* ¶ 6. Plaintiff and Defendant did not sign an employment contract. *Id.* ¶ 5. Defendant promoted Plaintiff to the full-time, hourly position of Human Resources Department Supervisor ("HRDS") in January 2013. *Id.* ¶ 8.

Plaintiff, as an hourly employee, kept her time at the Cherry Hill store using manual time punch cards. *Id.* ¶ 15. Plaintiff testified that her time cards were changed so Plaintiff was not compensated for time she worked over lunch breaks. *Id.* ¶ 18. Plaintiff informed Marie Bennett, her HRDS trainer, of the alterations. *Id.* ¶¶ 14, 18. Bennett told Elizabeth Rozier, the Regional Human Resources Business Partner responsible for the Cherry Hill store, about the issues at the Cherry Hill store. *Id.* ¶ 19. On February 20, 2013, Plaintiff spoke with Rozier and informed her that Plaintiff was not being paid for time she worked during lunch. *Id.* ¶ 20. On February 22, 2013, Rozier conducted an in-person investigation at the Cherry Hill store. *Id.* ¶ 27. She interviewed employees and compared the Cherry Hill store's punch edit log to punch edit reports. *Id.* ¶ 28.

On February 24, 2013, Rozier told Plaintiff that she was going to be transferred to another store. *Id.* ¶ 36. Plaintiff did not work at the Cherry Hill store after February 24, 2013. *Id.*

---

[1] Plaintiff failed to properly provide the required "responsive statement of material facts[.]" Loc. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.* The Court therefore deems undisputed the facts contained in Defendant's Statement of Material Facts for the purposes of Defendant's motion for summary judgment.

2

On February 28, 2013, Plaintiff emailed Rozier and informed her that Plaintiff was manually clocked out for breaks she did not take. *Id.* ¶ 26. Plaintiff testified that she did not know about the timekeeping alterations as they related to other employees until after Rozier's investigation. *Id.* ¶ 35. Rozier's investigation concluded that management at the Cherry Hill store had improperly altered the time records of Plaintiff and other employees. *Id.* ¶ 30. Defendant paid the employees, other than Plaintiff, the wages they were owed due to the timekeeping alterations. *Id.* ¶ 31.

Plaintiff testified that she and Rozier remained in communication for two months after Plaintiff stopped working at the Cherry Hill store. *Id.* ¶ 37. At some point, Rozier spoke to Plaintiff about returning to an HRDS position in the Cherry Hill store. *Id.* ¶ 38. Rozier also spoke to Plaintiff about going to work at the Lawrenceville, New Jersey or Deptford, New Jersey stores. *Id.* Plaintiff informed Rozier that she was going on vacation in the last week of March. *Id.* ¶ 39. Plaintiff and Rozier did not communicate after Plaintiff's vacation, and Plaintiff assumed that her employment with Defendant was terminated after Rozier did not contact her. *Id.* ¶ 40.

On October 15, 2013, Plaintiff filed her Complaint against Defendant in state court. *Id.* ¶ 45. Defendant "made an unconditional offer of reinstatement to Plaintiff" on November 6, 2013. *Id.* ¶ 42. Plaintiff declined Defendant's offer. *Id.* ¶ 44. Defendant then removed this matter to federal court on November 21, 2013 (Doc. No. 1). On September 3, 2014, Defendant offered to tender Plaintiff a check for $1079.60. *Id.* ¶ 48. On September 12, 2014, Defendant gave Plaintiff a check for $839.93—the gross amount of $1079.60 minus applicable taxes and withholdings. DSOMF ¶ 51. Plaintiff has not accepted the check. *See* Email from Roger Barbour to John M. Nolan, Mar. 18, 2015.

## II.     SUMMARY JUDGMENT STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Id.* at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257.  Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When parties file cross-motions for summary judgment, the court must apply the summary judgment standard to each party's motion individually. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

**III.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant removed this action from state court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has original jurisdiction over Plaintiff's claim arising under the maximum hours provisions of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 207(a). This Court has supplemental jurisdiction over Plaintiff's state law claims because they "form part of the same case or controversy" as her FLSA claim. 28 U.S.C. § 1367(a).

**A.     Claims for Unpaid Wages**

Plaintiff brings claims for unpaid wages under the FLSA, the New Jersey Wage and Hour Law (WHL), and New Jersey common law. *See* Compl. ¶¶ 1–14, 55–68 (first, second, seventh, and eighth counts). Defendant argues that Plaintiff's claims for unpaid wages are moot because Defendant tendered Plaintiff a check for $839.93 and offered to reinstate her. *See* Def.'s Br. at 7–8. Plaintiff refused the offer of reinstatement and has not cashed the check. *See id.*; Pl.'s Br. at 17. The Supreme Court recently held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case[.]" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016). Defendant's tender of a check and offer of reinstatement therefore do not moot Plaintiff's claims for unpaid wages. Defendant does not otherwise argue that it is entitled to judgment as a matter of law on these counts. *See generally* Def.'s Br. This Court will therefore deny Defendant's motion for summary judgment as to the first, second, seventh, and eighth counts of Plaintiff's Complaint.

### B.     CEPA Claim

Plaintiff brings a claim for violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1 *et seq*. *See* Compl. ¶¶ 15–29 (third count). New Jersey courts apply a burden-shifting analysis for CEPA claims where there is no "direct evidence of discriminatory animus." *See Fleming v. Correctional Healthcare Solutions, Inc.*, 164 N.J. 90, 100–01 (2000). The plaintiff bears the burden of establishing a *prima facie* case of unlawful retaliation. *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 611 (D.N.J. 2003). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden of establishing a *prima facie* case is "not intended to be onerous." *See Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 508 (3d Cir. 1996). The plaintiff need only show that retaliation "*could* be a reason for the employer's action." *See id.* If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to present a legitimate, non-retaliatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff. To survive summary judgment, a plaintiff must "offer[] sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation for the whistleblowing was the real reason for the discharge." *Blackburn v. UPS, Inc.*, 179 F.3d 81, 92–93 (3d Cir. 1999).

To establish a *prima facie* case of unlawful retaliation under CEPA, a plaintiff must show that she: (1) reasonably believed that the employer's conduct violated either a law or rule or regulation; (2) performed whistle-blowing activities; (3) suffered an adverse employment action; and (4) can establish a causal connection between the whistle-blowing action and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003). Defendant argues that

Plaintiff has not presented evidence to support the first, second, or fourth elements of a CEPA retaliation claim. *See* Def.'s Br. at 11.

CEPA requires reasonable belief of a violation, but CEPA does not require that a plaintiff precisely identify at the time of disclosure the statute or regulation violated by the complained-of conduct. *See Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 193–94 (1998) ("The object of CEPA is not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare."). According to Bennett, Plaintiff told Bennett about the timekeeping issues, and Bennett referred Plaintiff to Rozier. Bennet Dep. 10, 19. Plaintiff testified that Bennett told Plaintiff that changing the time cards was "illegal." Martelack Dep. 128. It is undisputed that Plaintiff subsequently told Rozier that managers at the Cherry Hill store changed Plaintiff's time cards to remove hours Plaintiff had worked. DSOMF ¶¶ 20, 26. A reasonable jury could infer that when Plaintiff spoke with Rozier, she reasonably believed that the managers' conduct was unlawful—because Bennett had previously told Plaintiff that such conduct was unlawful. There are therefore genuine issues of material fact regarding whether Plaintiff reasonably believed that Defendant's conduct was unlawful.

CEPA requires that Plaintiff show that she performed whistle-blowing activities. *Dzwonar*, 177 N.J. at 462. It is undisputed that Plaintiff told Bennett and Rozier, her supervisors, that her time cards were changed and that she was not being paid for time that she worked. DSOMF ¶¶ 18, 20. But Defendant argues that because Rozier already had knowledge of timekeeping issues, Plaintiff did not engage in whistle-blowing activity when she told Rozier about the timekeeping issues. *See* Def.'s Br. at 11. Defendant cites *Watkins v. State*, 2005 WL 3711182 (N.J. Super. Ct. App. Div. Jan. 30, 2006) to support its argument that "an employee

7

cannot claim to be a whistleblower by pointing to something of which the employer is already aware." *See* Def.'s Br. at 13. Contrary to Defendant's assertions, *Watkins* is distinguishable from the facts of this case. The plaintiff's complaints in *Watkins* did not implicate any violation of a law, regulation, or "clear mandate of public policy." *See Watkins*, 2005 WL 3711182 at *3. Plaintiff's complaints to Bennett and Rozier regarding the timekeeping issues implicated violations of both federal and state law. Furthermore, contrary to the plaintiff in *Watkins*, there is no evidence that Plaintiff's job duties included reporting the timekeeping issues to her supervisors. The Supreme Court of New Jersey has instructed courts that CEPA "should be construed liberally[.]" *See, e.g., Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 27 (2014). In the absence of persuasive state precedent, this Court declines to construe CEPA inapplicable to situations where an employer is already aware of violations of laws, regulations, or clear mandates of public policy. The construction that Defendant is requesting would fail to protect employees who inadvertently report violations to supervisors or employers complicit in—and thus knowledgeable of—such violations. Defendant has therefore failed to show that, based on the undisputed facts, Plaintiff did not engage in whistle-blowing activities within the meaning of CEPA.

  CEPA also requires that Plaintiff demonstrate a causal connection between her whistle-blowing activities and an adverse employment action. *Dzwonar*, 177 N.J. at 462. It is undisputed that Rozier told Plaintiff that she was being transferred to another store, and that Plaintiff was then terminated from her employment with Defendant sometime shortly thereafter. DSOMF ¶¶ 36, 40. Plaintiffs need not present direct evidence of causation to prevail on a CEPA claim of unlawful retaliation. *See Maimone v. City of Atlantic City*, 188 N.J. 221, 238–39 (2006). A jury may make a finding of causation "based solely on circumstantial evidence that the person

ultimately responsible for an adverse employment action was aware of an employee's whistle-blowing activity." *Id.* Temporal proximity of a plaintiff's whistle-blowing activity and alleged retaliatory conduct is circumstantial evidence "that may support an inference of causal connection." *Id.* at 237. The temporal proximity of Plaintiff's termination to her discussions with Bennett and Rozier about the alterations to her time cards raises a genuine issue of material fact as to causation.[2]

Summary judgment is "rarely appropriate" in cases where the question is "why did the employer take an adverse employment action against plaintiff?" *Marzano*, 91 F.3d at 509. It is for the jury to decide at trial whether those actions were taken for a legitimate, non-retaliatory reason or as retaliation for Plaintiff's alleged whistle-blowing activity. This Court will therefore deny Defendant's motion for summary judgment as to Plaintiff's CEPA claim.

### C.  Hostile Work Environment Claim

Plaintiff brings two claims for hostile work environment. *See* Compl. ¶¶ 30–43 (fourth count); *id.* ¶¶ 69–77 (ninth count). Plaintiff's fourth count alleges that on February 24, 2013, she received "conflicting work instructions and duties," and she "was given the cold shoulder by co-workers[.]" *Id.* ¶¶ 32–33.[3] Plaintiff's ninth count is for hostile work environment sexual harassment, brought under the New Jersey Law Against Discrimination ("LAD"). N.J.S.A. 10:5–1 *et seq.* Although Plaintiff failed to oppose Defendant's motion for summary judgment as to the

---

[2] Defendant argues that "there is no competent evidence that Bennett or any of the individuals who made complaints through Defendant's employee hotline were terminated or disciplined in any way for reporting timekeeping issues." *See* Def.'s Br. at 11. At the summary judgment stage, the Court cannot weigh the circumstantial evidence for and against causation—that is left to the factfinder at trial.

[3] Although Plaintiff does not invoke CEPA in her fourth count, this Court will interpret Plaintiff's fourth count to be brought under CEPA. New Jersey common law does not recognize a cause of action for hostile work environment. *See Vosough v. Kierce*, 437 N.J. Super. 218, 225 (App. Div. 2014).

fourth and ninth counts of her Complaint, Defendant must still demonstrate that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e). *See also Anchorage Assoc. v. Virgin Island Bd. of Tax Review*, 922 F.2d 168, 174–76 (3d Cir. 1990) (holding that even where a motion for summary judgment is unopposed, a district court cannot enter summary judgment "unless the facts set forth in the motion entitled [movant] to judgment as a matter of law."). Defendant satisfied its burden and is entitled to judgment as a matter of law as to the fourth and ninth counts of Plaintiff's Complaint.

To establish a hostile work environment claim under CEPA, a plaintiff must present evidence that (1) there was a causal connection between her whistleblowing activities and the alleged hostile conduct, and (2) the conduct was "severe or pervasive enough" (3) to make a reasonable person believe (4) "the conditions of employment had been altered and the working environment had become hostile and abusive[.]" *Cokus v. Bristol Myers Squibb Co.*, 362 N.J. Super. 366, 387 (Law Div. 2002) *aff'd sub nom.* 362 N.J. Super. 245 (App. Div. 2003). Plaintiff has failed to present any evidence of "severe or pervasive" harassing conduct. This Court will therefore grant Defendant's motion for summary judgment as to Plaintiff's claim for hostile work environment under CEPA.

To establish a hostile work environment sexual harassment claim under LAD, a plaintiff must present evidence that (1) the harassing conduct "would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 604 (1993). Plaintiff fails to present any evidence of a causal connection between the alleged harassment and her gender. Plaintiff testified that her gender was not the reasons she experienced a hostile work environment. *See*

Martelack Dep. 264–65. Plaintiff further fails to present any evidence of "severe or pervasive" harassing conduct. This Court will therefore grant Defendant's motion for summary judgment as to Plaintiff's claim for hostile work environment sexual harassment under LAD.

### D. Claim for Wrongful Discharge in Violation of Company Policy

Plaintiff alleges that Defendant terminated her in violation of its own company policy. *See* Compl. ¶¶ 44–50 (fifth count). Plaintiff failed to oppose Defendant's motion for summary judgment as to the fifth count of her Complaint. *See generally* Pl.'s Br.; Pl.'s Opp'n Br. It is undisputed that Plaintiff and Defendant did not have an employment contract. DSOMF ¶ 5. Furthermore, Plaintiff has not provided any evidence to overcome the presumption under New Jersey law of at-will employment. *See Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 397–98 (1994). According to the employment-at-will doctrine, "an employer may fire an employee for good reason, bad reason, or no reason at all[.]" *Id.* at 397.[4] Because Plaintiff has not provided any evidence that she was terminated in violation of an enforceable contractual provision, this Court will grant Defendant's motion for summary judgment as to Plaintiff's fifth count.

### E. Claim for Wrongful Discharge in Violation of Public Policy

Plaintiff brings a common law claim for wrongful discharge in violation of public policy. *See* Compl. ¶¶ 51–54 (sixth count). Plaintiff failed to oppose Defendant's motion for summary judgment as to the sixth count of her Complaint. *See generally* Pl.'s Br.; Pl.'s Opp'n Br. This Court finds, however, that Defendant is not entitled to judgment as a matter of law as to Plaintiff's claim for wrongful discharge in violation of public policy.

---

[4] Exceptions exist to the employment-at-will doctrine. For example, an employer cannot terminate an employee for a discriminatory reason or in violation of public policy. *Witkowski*, 136 N.J. at 398. Those exceptions are not relevant, however, to Plaintiff's claim of wrongful discharge in violation of company policy.

Defendant argues that Plaintiff waived her common law claim for wrongful discharge because she simultaneously filed a CEPA claim. Def.'s Br. at 21. CEPA includes a waiver provision. N.J.S.A. 34:19–8. A plaintiff cannot pursue "both statutory and common-law retaliatory discharge causes of action." *Young v. Schering Corp.*, 141 N.J. 16, 27 (1995). Plaintiff therefore cannot bring to trial both her CEPA claim and her common law claim for wrongful discharge. The New Jersey Supreme Court has not yet determined when a plaintiff must elect between CEPA and other causes of action. *See id.* at 32–33 (suggesting that plaintiff may not need to elect his remedy until "discovery is complete or the time of a pretrial conference[]"). This Court will allow Plaintiff to choose between her CEPA claim and her wrongful discharge claim at or before the pretrial conference.

To establish a wrongful discharge claim under New Jersey law, a plaintiff must (1) identify a clear mandate of public policy violated by his termination; (2) allege that he made complaints about, or refused to participate in, conduct by defendants that violated that public policy; and (3) establish that he was discharged in retaliation for opposing the conduct of defendants that violated the public policy at issue. *See Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72–73 (1980). Plaintiff raises a genuine issue of material fact as to her wrongful discharge claim for the same reasons as her CEPA claim. Defendant does not dispute that Plaintiff told Bennett and Rozier that her time cards were changed and that she was not being paid for time that she worked. DSOMF ¶¶ 18, 20. Defendant also does not dispute that Rozier told Plaintiff that she was being transferred to another store shortly thereafter, and Plaintiff was then terminated from her employment with Defendant. *Id.* ¶¶ 36, 40. A reasonable jury could find that Defendant terminated Plaintiff because of her complaints about the managers changing her time cards. *See Maimone v. City of Atlantic City*, 188 N.J. 221, 237 (2006) (temporal proximity is circumstantial

12

evidence of causation). This Court will therefore deny Defendant's motion for summary judgment as to Plaintiff's claim for wrongful discharge in violation of public policy.

### IV.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for summary judgment on the first, second, third, and seventh counts of her Complaint. *See generally* Pl.'s Br. Plaintiff's motion does not comply with the local civil rules. Plaintiff fails to provide a statement of material facts separate from her brief. A party moving for summary judgment "shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue[.]" Loc. Civ. R. 56.1(a). The statement must "cit[e] to the affidavits and other documents submitted in support of the motion." *Id.* Furthermore, "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law." *Id.* The "statement of undisputed facts" in Plaintiff's brief alleges many facts without citing to any evidentiary support. *See, e.g.,* Pl.'s Br. at 7. The statement also contains both legal conclusions and speculation. *See, e.g., id.* at 11, 14.

The Court will not consider the submitted "Certification of Plaintiff's Counsel in Response to Defense Counsel's Certification of Facts" as a separate statement of material facts (Doc. No. 42). First, it accompanies Plaintiff's reply brief, not Plaintiff's motion for summary judgment. Second, it is improperly presented in the form of a certification by Plaintiff's counsel. A certification "shall be restricted to statements of fact within the personal knowledge of the signatory. Arguments of the facts and the law shall not be contained in such documents." Loc. Civ. R. 7.2(a). Third, Plaintiff does not properly authenticate the attached exhibits. *See* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2722 (2d ed. 1983) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)[.]"). In deciding a motion for summary

13

judgment, the Court may consider only evidence which is admissible at trial. Fed. R. Civ. P. 56(e); *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995).

This Court will dismiss without prejudice Plaintiff's motion for partial summary judgment. Loc. Civ. R. 56.1 ("A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."). Plaintiff will have fourteen days to file a motion for summary judgment that is fully compliant with this opinion.

## V.    DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Plaintiff demands a jury trial in her Complaint, and Defendant now moves to strike Plaintiff's jury demand. Def.'s Br. at 23–29. Plaintiff accepted a Privacy Agreement containing the following provision:

> To the extent permitted by law, if I am hired, I agree as a condition of any employment to waive my right to a jury trial in any action or proceeding related to my employment or the termination of my employment with the Company. I am waiving my right to a jury trial voluntarily and knowingly, and free from coercion. I understand that I have a right to consult with a person of my choosing before signing this application.

Nolan Cert., Ex. B at DEF0013; Martelack Dep. 216–17. The question for this Court to determine is whether that provision is a valid, enforceable waiver of Plaintiff's right to a trial by jury.

The Seventh Amendment to the United States Constitution guarantees the right to a trial by jury in civil cases. U.S. Const. amend. VII. Parties may waive their right to a jury trial. *In re City of Philadelphia Litigation*, 158 F.3d 723, 726 (3d Cir. 1998). This Court must apply federal law to "determin[e] whether a contractual jury trial waiver is enforceable." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007). A contractual jury waiver is not valid unless it was made knowingly and voluntarily. *Tracinda*, 502 F.3d at 222. A waiver is knowingly and voluntarily made if: "(1) there was no gross disparity in bargaining power between the

14

parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous." *First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001). *See also Tracinda*, 502 F.3d at 222 (citing *First Union*, 164 F. Supp. 2d at 663)). The presumption is against waiver. *Tracinda*, 502 F.3d at 222.

Based on the facts of this case, Plaintiff's contractual waiver was neither knowing nor voluntary. Plaintiff was applying online for employment with Defendant. The Privacy Agreement was a standard form that Plaintiff needed to accept to submit her application. There was obviously a gross disparity in bargaining power between Plaintiff and Defendant. Furthermore, Defendant is a sophisticated business entity, and Plaintiff is not. And although the provision stated that Plaintiff had "a right to consult with a person of [her] choosing before signing this application[,]" there was no true opportunity for the parties to negotiate the terms of the privacy agreement. Finally, from the screenshots of the Privacy Agreement provided by Defendant, the Court finds that the jury trial waiver provision was not conspicuous in the Privacy Agreement. *See* Nolan Cert., Ex. B. at DEF0013. The waiver provision was just one of many provisions in the Privacy Agreement, it was placed somewhere in the middle of the text, and it was set forth in the same text size as the rest of the agreement. This Court therefore finds that Plaintiff's waiver was not knowing and voluntary. Defendant's motion to strike Plaintiff's jury demand is denied.

## VI.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 37) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Strike Plaintiff's Jury

Demand (Doc. No. 37) is **DENIED**. Plaintiff's Motion for Summary Judgment (Doc. No. 38) is **DISMISSED WITHOUT PREJUDICE**.

Dated:     02/25/2016                                              s/ Robert B. Kugler

                                                                                ROBERT B. KUGLER

                                                                                United States District Judge